## Smith's and Wolff's Appeal.

104  381
117   34
125  210
133  112

1. A legatee in remainder made a voluntary assignment for the benefit of creditors. His assignee filed a bill against the life tenant who was in possession of the trust fund, and pending the action, the life tenant died: *Held*, that the bill was not prematurely filed, as it is the duty of a court of equity to pursue an insolvent's interest in a trust fund, restrain its improper conversion, control its investment and, generally, to prevent any maladministration of the trust.

2. A voluntary assignment for the benefit of creditors, which is valid by the law of the assignor's domicile, is sufficient of itself to pass title to the insolvent's personal estate, wheresoever situate, and the deed, without recording, is effective as against the assignor.

3. The Act of May 3d 1855 (Br. Purd. 92, pl. 8), relating to voluntary assignments, gives a more extended operation to them than they had at common law, by providing that the assignment of a non-resident may be recorded within any county of this state where the assignor has any real or personal estate, and will then take effect from its date, saving the rights of " bonâ fide purchasers, mortgagees or creditors having a lien thereon before the recording, in the same county, and not having had previous actual notice thereof." Those having actual knowledge of the assignment are not within this saving clause, and can take no title by deed from the assignor.

4. Property in this state, belonging to an insolvent who is resident in another, and has there made a valid assignment for the benefit of his creditors, is distinguished from that of a foreign decedent, or of an involuntary bankrupt or insolvent, or that in the hands of a receiver, in this: that it has passed from the insolvent to his assignees by a voluntary conveyance, and not in invitum by process of law; and as the foreign resident, before his assignment, for a valuable consideration, could have disposed of the estate here situate, and could have placed the consideration within his own control, he may, with like effect, convey his estate for the benefit of creditors here or elsewhere.

5. In the distribution of the estates of foreign decedents, the rights of domestic creditors must be protected in the courts of this state; but in the case of an assignment by a foreign insolvent for the benefit of his creditors, a widely different policy has been pursued. The fact that a statute of limitation of the state of the insolvent's domicile runs after three years, and has been pleaded in bar of a claim of a creditor of this state by the assignees, does not raise any equity in such creditor to claim distribution of the fund in this state for his protection.

[Smith's Appeal.]

. October 24th 1883.   Before MERCUR, C. J., GORDON, PAX-
SON, TRUNKEY, STERRETT and CLARK, JJ.   GREEN, J., absent.

APPEAL from the Court of Common Pleas No. 2, of *Alle-
gheny county :* Of October Term 1883, No. 9.

Bill in equity filed February 10th 1878, by W. H. Mc-
Dowell, John Lind McAtee and Theodore Embry, assignees
for the benefit of creditors of George G. Smith, against Martha
McD. Smith, praying that defendant be required to account
for and pay over certain moneys in her possession belonging to
said assigned estate.   In February 1880, after the bill was
filed, the defendant died, and her executors, L. H. Smith and
B. Wolff, Jr. were substituted and filed an answer.

The case was referred to C. W. Robb, Esq., as Examiner
and Master, who reported the facts to be substantially as fol-
lows :   Charles Smith, of New Brunswick, New Jersey, died on
May 18th 1848, leaving a will in which he bequeathed to Fitz
Randolph Smith and Charles Smith Olden, of Princeton, cer-
tain bonds, mortgages, &c., in trust to pay the income thereof
to his nephew, Charles Gardiner Smith, during his life ; to
Charles' wife, Martha McDowell Smith, in case she should sur-
vive him, during her life ; and after the death of Charles
Gardiner Smith and his said wife, to apply the income to the
support, maintenance and education of the children of his said
nephew, until they should severally arrive at the age of twenty-
one years, and as they arrived at that age, respectively, to pay
to each of said children one equal share of the fund with its
accumulations.   Charles Gardiner Smith died November 2d
1870, leaving to survive him his wife Martha McD. Smith, a
citizen of Pennsylvania, and five children.   George G. Smith,
one of these children, was a citizen of Maryland, and having
become insolvent, made a voluntary assignment under the in-
solvent laws of that state on April 22d 1874, to McDowell,
McAtee and Embry, the complainants in the bill.   By this
assignment Smith conveyed " all and singular the real and per-
sonal property of which he was then possessed wheresoever
situate, together with all and singular his interest and estates
of every kind and description wheresoever situate, including
real estate described in the deed, &c., and also all money due
and payable to him, and all moneys thereafter to become due
and payable on and by all and singular all notes, bills, bonds,
judgments and mortgages then held by or made payable to
him."   There was no particular mention made of the property
in New Jersey.   This deed was duly recorded in Washington
county, Maryland, the assignor's domicile, on April 22d 1874,
and in Pennsylvania in the year 1878, but was never recorded
in New Jersey.   On October 5th 1874, George G. Smith
joined with his brothers and sisters in an assignment to his

mother, Martha McD. Smith, of all their interest in remainder in the trust fund held by Fitz Randolph Smith and Charles Smith Olden. Mrs. Smith had then full knowledge of this previous assignment for the benefit of his creditors, and knew of it as early as June 18th 1874 when she purchased part of his real estate in Maryland from his assignees, McDowell et al. On December 18th 1874, Martha McD. Smith filed a bill in the Court of Chancery, New Jersey, against Charles Olden, the surviving trustee under her husband's will and all of her children. The assignees of George G. Smith were not parties to this bill. Subsequently, on February 16th 1875, the Court of Chancery made a final decree that the said fund amounting to $59,819.15 should be paid to her; and in pursuance of this decree she received that amount from Olden, the trustee. At this time George G. Smith was indebted to his mother to the amount of $29,885.69, over $11,000 of which was represented by his notes on which she was liable as indorser. George G. Smith's share of the $59,819.15 received by Mrs. Smith amounted to $11,963.89, and this amount was appropriated by her principally to the payment of his debts for which she was herself liable. George G. Smith's indebtedness to his Maryland creditors was also large, amounting to about $40,000. After the filing of the present bill Martha McD. Smith presented her claim as a creditor of George G. Smith to his Maryland assignees, the present plaintiffs. The courts of that state held, however, that her claim was barred by the statute of limitations there in force.

The Master therefore found, under the law and facts, that Martha McDowell Smith, in her lifetime, received of Charles S. Olden, surviving executor and trustee under the last will and testament of Dr. Charles Smith, of New Jersey, deceased, $11,963.89 in money or bonds which belonged to George G. Smith and which passed under his assignment for the benefit of creditors to W. M. McDowell, John Lind McAtee and Theodore Embry, of Maryland. The statutes of Maryland and New Jersey relating to voluntary assignments were not in evidence, and the case was decided under the laws of Pennsylvania.

The court below having dismissed exceptions filed to this report, entered the following decree :

"September 18th 1882, this cause came on to be heard and was argued by counsel, and the plaintiffs having filed of record in this cause an instrument in writing, requesting and authorizing them for the creditors of George G. Smith to waive and disregard the plea of the statute of limitations as against the claim of the estate of Mrs. Martha McDowell Smith to participate in the fund, which is now, or which may hereafter

[Smith's Appeal.]

come into their hands for distribution among the creditors of the said George G. Smith, which instrument was signed by the principal creditors of said George G. Smith, and it appearing to the court, from the pleadings and evidence in the said cause, and the finding of facts and law by the Master, that Martha McDowell Smith, having received in her lifetime from Charles S. Olden, surviving executor and trustee of the last will and testament of Dr. Charles Smith, of New Jersey, deceased, the sum of $11,963.89 in money and bonds, which belonged to George G. Smith, and which passed under his voluntary assignment for the benefit of creditors to the plaintiffs in this suit, which sum, with interest thereon from March 1st 1880, amounts to $13,760.47, now due and payable from L. H. Smith and Bernard Wolff, executors of said Martha McDowell Smith to the plaintiffs, upon consideration thereof the court order, adjudge and decree that the said money, to wit: $13,760.47 be accounted for and paid over to the plaintiffs by the said executors, the defendants, out of any moneys in their hands belonging to the estate of the said Martha McDowell Smith, and that they also first pay the costs of this suit out of any funds of the said estate in their hands."

Smith and Wolff, the executors of Martha McD. Smith, thereupon took this writ, assigning for error:—

1. The above decree of the court.

2. The court erred in holding that the estate of Mrs. Smith should pay to the assignees of George G. Smith, the sum of ($13,760.47) thirteen thousand seven hundred and sixty dollars and forty-seven cents.

3. The court erred in deciding that a court of equity sitting in Pennsylvania, would order and decree that Pennsylvania assets belonging to an insolvent of the state of Maryland, should be paid over to the Maryland assignees of the insolvent, and this without any provision in reference to the payment by the Maryland assignees of the Pennsylvania creditors of the insolvent.

4. Under the circumstances of this case, the court below should have applied George G. Smith's interest in this trust fund to the payment of the Pennsylvania creditors, including Mrs. Smith, and erred in not so decreeing.

5. The court below should have entered a decree, dismissing the bill on the ground that it was prematurely filed.

*D. T. Watson*, for the appellants.—The remedy in equity invoked by the plaintiffs is not of right, but of grace : Weise's Appeal, 22 P. F. Smith 351 ; Washabaugh *v.* Stauffer, 32 P. F. Smith 502 ; Mitchell *v.* Steinmetz, 1 Out. 254. The assignees should not be permitted to take the fund out of this state with-

[Smith's Appeal.]

out settling with the creditors here. If equity takes jurisdic-
tion here, it should retain it, to give entire relief: Bank of U.
S. v. Biddle, 2 Parsons 31 ; Wilhelm's Appeal, 29 P. F. Smith
120. By the Maryland statute of limitations, the claim of Mrs.
Smith against her son's assigned estate would be barred after
three years, which have, of course, elapsed : Revised Code of
Maryland, p. 746, § 1 ; Mudd v. Harper, 1 Md. 115 ; Mitchell
v. Mitchell, 10 Md. 234. The decree does not make it a con-
dition of the payment of the money to the assignees that the
statute shall not be pleaded to Mrs. Smith's claim. He that
seeks equity must do equity : Davidson v. Barclay, 13 P. F.
Smith 406 ; Story's Eq. Jurisprudence 12th ed. § 64 E. The
assignees were not made parties to the bill filed by Mrs. Smith
against the trustee of her husband's will, because they did not
record their assignment in New Jersey. The negligence was
on their part, not Mrs. Smith's, as she acted in entire good
faith.

*George Shiras, Jr.* (with whom was *J. M. Stoner*), for the
appellees.—The deed of April 22d 1874, by George G. Smith
to McDowell, McAtee and Embry, having been accepted by
them, the legal title to all the property intended to be assigned
and conveyed by it passed from the assignor to them, and the
trust which it was its principal object to create in favor of
creditors instantly took effect: Seal v. Duffy, 4 Barr 274 ; Read
v. Robinson, 6 W. & S. 329 ; Law v. Mills, 6 Harris 185 ;
Wiener v. Davis, 6 Harris 331 ; Lewis v. Barry, 22 P. F. Smith
18. This deed had the same effect as if the debtor had deliv-
ered money to an agent to pay his creditors : Story's Equity
§ 972, n. 3. Without any record the deed was effective as
against the grantor. Recording is only to guard against frauds
upon subsequent purchasers or mortgagees without notice. The
Master has found, upon abundant evidence, that Mrs. Smith
was fully aware of this assignment when her son joined in the
assignment to her of her children's interests in the trust fund.
Of course, as the assignees were not parties to the chancery
proceedings in New Jersey, they are not bound by the decree
therein.

Mr. Justice CLARK delivered the opinion of the court, Jan-
uary 7th 1884.

On the 18th of May 1848, Dr. Charles Smith of New
Brunswick, New Jersey, having made his last will and testa-
ment, died possessed of a large estate, consisting of real and
personal property. By his will he bequeathed to Fitz Ran-
dolph Smith and Charles Smith Olden, of Princeton, certain
personal securities, upon the trust, that the income thereof
should be paid to his nephew, Charles Gardiner Smith, during

8 OUTERBRIDGE.—25

his life, to Charles' wife, Martha McDowell Smith, in case she should survive him, during her life; after the death of the said Charles Gardiner Smith, and his said wife, that they should apply the income to the support, maintenance and education of the children of his said nephew, until they should severally arrive at the age of twenty-one years, and as they arrived at that age, respectively, to pay each of said children one equal share of the fund with its accumulations.

Charles Gardiner Smith died on the 2d November 1870, leaving surviving him, a widow, the said Martha McDowell Smith, a citizen of Pennsylvania and five children of whom Geo. G. Smith was one.

George G. Smith who was a citizen of the state of Maryland became insolvent, and on the 22d April 1874, executed a deed of voluntary assignment for the benefit of his creditors, under the laws of that state, to W. H. McDowell, John Lind McAtee and Theodore Embry. This assignment was duly recorded at the place of the domicile of the assignor, but was never recorded in New Jersey, nor was it recorded in Pennsylvania until in the year 1878.

On the 5th October 1874, Geo. G. Smith joined with his brothers and sisters in an assignment to their mother, Martha McDowell Smith, of all their interest in the fund held in trust by Fitz Randolph Smith and Charles Smith Olden in the state of New Jersey, and on the 15th February 1875, upon a bill in chancery, preferred by Martha McDowell Smith, against the executors of the last will and testament of Dr. Charles Smith, deceased, and against her own children, to which the assignees for creditors were not made parties, the New Jersey Chancery Court ordered and decreed that the said fund amounting to $59,819.15 should be paid to her; pursuant to this decree the entire fund passed into her hands. At the time of this transfer of the New Jersey fund to Martha McDowell Smith, by her children, she had "previous actual notice," of the general assignment for creditors in Maryland; indeed, it cannot be doubted that she had full knowledge of the assignment on and after the 18th June 1874, when she purchased a portion of the assigned estate from the assignees.

At the time of the receipt by Martha McDowell Smith, of this fund from the executors of Dr. Charles Smith, deceased, in February 1875, George G. Smith was indebted to his mother in a large sum of money, perhaps exceeding the amount of his share; on the 16th November 1874, this indebtedness aggregated $29,885.69, whilst his entire liabilities at the same time exceeded $40,000.

On the 16th February 1878, this bill was filed, setting forth the facts substantially as here stated, and praying for proper

relief. The bill was not premature, as it was the clear duty of the court to pursue this fund, restrain its improper conversion, control its investment, and generally, to prevent any mal-administration of the trust. Martha McDowell Smith died in the month of February 1880, and L. H. Smith and B. Wolff, executors of her last will and testament, were substituted as defendants.

The assignment of 22d April 1874, for the benefit of creditors of George G. Smith, was a voluntary conveyance; it was not one made in invitum, or by coercion of law, and being valid, according to its purpose, by the laws of Maryland, it was sufficient of itself to pass the title to the insolvent's personal estate, wheresoever situate. The law of the domicile regulates the transfer of personal property, and the deed, without record, was effective as against the grantor: Speed v. May, 5 Harris 91; Law v. Mills, 6 Harris 185; Evans v. Dunkelberger, 3 Gr. 134; Lewis v. Barry, 22 P. F. Smith 18.

The fund in controversy, at the date of the assignment for creditors, was in the control of the executors of Dr. Charles Smith, deceased; where invested does not appear, but the argument proceeds upon the assumption that the legal situs of the property was in Pennsylvania.

But the Act of 3rd May 1855 gives a more extended operation to conveyances of this character; it provides :—" Whenever any person making an assignment of his or her estate, situate within this Commonwealth, for the benefit of creditors, shall be resident out of this state, such assignment may be recorded within any county where such estate, real or personal, may be, and take effect from its date." It cannot be doubted, therefore, that the legal effect of recording the deed of 22d April 1874, in Pennsylvania, in 1878, under this Act, was to add to its force at the common law, and give it full effect from its date, saving the rights accrued to " bona fide purchasers, mortgagees or creditors, having a lien thereon before the recording, in the same county, and not having had previous actual notice thereof." As it clearly appears that Martha McDowell Smith had this previous actual notice, she cannot come within this saving clause; she took no title, therefore, to the share of George G. Smith in this trust fund by the transfer of 5th October 1874. The fund has, however, been traced into her hands and as by her decease since the filing of this bill, the time has arrived for distribution, under the will of Dr. Charles Smith, deceased, it is but just that a decree shall be entered for payment of George G. Smith's share of the trust fund to the assignees for creditors, unless some superior equity intervenes to prevent such a decree.

It is objected however, that Geo. G. Smith was indebted to

his mother at the date of his general assignment, in a sum, equal to, or greater than his share in the fund found in her hands, and, that, being a citizen of Pennsylvania, she presented her claims as a creditor, in the proper courts of Maryland, for a distributive share in the assigned estate, when the assignees interposed the bar of the statute of limitations of the latter state, and the lapse of a period of three years only from the time the right of action accrued, without suit brought, was there held to be a complete bar, against the allowance of her said claims. The effect of the assignment made by Geo. G. Smith, was to withdraw his property in Pennsylvania, where the statutory limitation is six years, from seizure for debts existing there. It is contended, therefore, that it would be inequitable and unjust to compel her to relinquish the fund in her hand, in order to its removal into a foreign jurisdiction, where her clear rights may thus be disregarded and defeated by the absolute bar of a foreign statute, and that as a Pennsylvania creditor she is entitled to protection against such a result.

In the distribution of the estates of decedents, whose domicile was in a foreign state, it is conceded that the rights of domestic claimants must be protected here; they must not be put to the expense or danger of following the home fund into a foreign jurisdiction: the absence or presence of domestic claimants upon the fund determines the action of the court, under the comity of nations; it is not a question of jurisdiction, in such a case, but merely one of judicial discretion. The same rule has been observed, in the distribution of a fund arising from the transfer of property made under coercion of the law, in any form, as an assignment in involuntary bankruptcy, or of a fund in the hands of a receiver. In all such cases, the transfer being in invitum, by process abroad, it will be regarded only so far as it is not inconsistent with the rights and claims of our own citizens: Lowry *v.* Hall, 2 W. & S. 131. But in the case of a voluntary assignment for creditors, no such rule has ever been recognized in this state; on the contrary, as shown by numerous decisions, and by the provisions of the Act of 1855, a widely different policy has been pursued. If the owner of personal goods or estate in Pennsylvania, may, at the place of his domicile in a foreign state, bona fide and for valuable consideration, dispose of the same, receiving and placing the consideration within his own control, and this he may undoubtedly do, he may certainly with like effect convey his estate to the benefit of his creditors here and elsewhere. As stated by Chief Justice GIBSON in Lowry *v.* Hall, 2 W. & S. 131: "The voluntary transfer of a chattel by the debtor, if not forbidden in other respects by the law at the place of the situs, is to be as

much regarded there or elsewhere as it would be at the place of the domicile."

Whilst an extra-territorial effect is almost denied to an assignment made compulsorily, to one voluntarily made, ex mero motu, by a failing debtor, full effect is always given, not only in Pennsylvania but in the other states of the Union ; a failing debtor has the right to make such legal disposition of his property among his creditors, as he may elect.  Mr. Justice STORY in his Conflict of Laws § 111, says : " It is therefore admitted that a voluntary assignment, by a party, made according to the law of his domicile, will pass the personal estate, whatever may be its locality, abroad as well as at home.   The law distinguishes that which results from the exercise of power under the law, from that which comes from the free will of the party ; the former is limited in its effect to the country where the law is in force, whilst the latter is given universal and general operation, under the comity of nations:  Speed *v.* May, supra ; Dundas *v.* Bowler, 3 McLean 397 ; Livermore *v.* Jenckes, 21 Howard 126.

As Martha McDowell Smith had acquired no lien upon or proper claim to the trust fund, paid to her by the executors of Dr. Charles Smith, deceased, as against the previous assignment for creditors, we discover no good reason for disturbing the judgment of the court below.

The decree is therefore affirmed, and it is ordered that the costs of this appeal be paid by the appellants.