# S. J. LOFTUS v. F. & M. N. BANK.

## APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 4 OF PHILADELPHIA COUNTY.

Argued January 8, 1890—Decided March 10, 1890.
[To be reported.]

1. The Married Person's Property Act of June 3, 1887, P. L. 332, relating to the rights and powers of married women in the control and disposition of their separate property, cannot be assumed as intended to apply to married women domiciled in other states. It is therefore without effect as to the validity of a power of attorney executed by a wife domiciled with her husband in England.

2. The settled general rule is, that the validity of a transfer of personal property is to be determined by the law of the owner's domicile, especially when its determination involves a question of legal disability, such as infancy. coverture, etc.; but this rule is subject to the power of the state to declare otherwise, as to property having an actual or legal situs within its borders.

3. The act of March 18, 1875, P. L. 24, making it lawful for any married woman owning any of the loans of the commonwealth or of the city of Philadelphia, etc., to sell and transfer them with like effect as if unmarried, applies to all owners of such loans, including foreign or nonresident married women, and confers, as an incident of the authority to transfer, the power to appoint an attorney for that purpose.

4. Said act of 1875 is not in conflict with § 7, article III. of the constitution. It is not a regulation of the municipal affairs of the city of Philadelphia, within the meaning of that section, but it is a regulation of the mode of transfer of certain kinds of property for the public business convenience, and the legislature may include in such a regulation such city loans as the public convenience requires.

5. Under said act, an instrument appointing an attorney to transfer a loan of the city of Philadelphia, which the owner of such loan, a married woman whose husband is a British subject domiciled in England and was married to her in Italy, has executed and acknowledged in New York in the same manner as if she were unmarried, is valid and effectual, although the husband has not joined in nor consented to it.

Before STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 324 January Term 1889, Sup. Ct.; court below, No. 438 December Term 1888, C. P. No. 4.

Statement of Facts.

On December 5, 1888, James S. Swartz brought assumpsit against the Farmers and Mechanics National Bank of Philadelphia. On January 5, 1889, by agreement the record was amended by substituting S. Josephine Loftus as plaintiff, and thereupon the following case was stated for the opinion of the court:

The plaintiff is the owner of the following certificates of loan of the city of Philadelphia, viz.: Certificate of six per cent loan for $1,000, being "loan for the payment of liabilities of the city; ordinance of December 14th, 1861," certificate No. 4642, which matures on the first day of January, 1892, a copy of which certificate is hereunto appended; and a certificate of six per cent loan for $20,000, being "Girard Avenue Bridge and Culvert Loan 51; approved October 14th, 1872," certificate No. 488, which matures on the first day of January, 1903, a copy of which certificate is hereunto appended.

The plaintiff is a married woman, the wife of Henry J. Loftus, a subject of Great Britain. She was born in Philadelphia, and resided in that city for some years. She was married to her husband in Italy in the year 1880, and has since resided with him in different places, principally abroad. Her husband has acquired no domicile in Pennsylvania. The property represented by the certificates in question accrued to plaintiff prior to her marriage. The plaintiff being about to depart to Europe (where she has since remained) on August 28, 1888, executed a power of attorney (of which a copy is attached hereto) to transfer the said loans, and placed the certificates in the hands of her attorney-in-fact. On December 6, 1888, the plaintiff sold the said loan of $1,000, and $15,000 of the loan of $20,000, to Messrs. Drexel & Co.

By an ordinance of the councils of the city of Philadelphia of February 16, 1872, the defendants were made the loan and transfer agents of the said city, and by an ordinance of March 16, 1872, they are required, upon presentation and delivery to them of certificates of loan of the said city for the purpose of transfer, to issue and deliver to the transferee a certificate in a form similar to the certificates appended hereto.

The plaintiff, through her attorney-in-fact, having made the sale as aforesaid on December 6, 1888, presented to the defendants the said certificates of loan, with the power of attorney

Opinion of Court below.

hereinbefore mentioned, for the purpose of obtaining the transfer of the loans aforesaid to the said Messrs. Drexel & Co. Thereupon the defendants refused to make the said transfer, assigning as the reason for their refusal that the husband of the plaintiff had not joined in the power of attorney so executed as aforesaid.

It is agreed that if the court shall be of the opinion that the plaintiff is entitled to have the transfer made as aforesaid, judgment for damages shall be entered in favor of the plaintiff for $1,000, without costs, such judgment to be satisfied by the transfer of the said loans by the said defendants to said Drexel & Co., under said power. If the court shall be of opinion that the plaintiff is not entitled to have the transfer made as demanded, then judgment shall be entered for the defendants, without costs.

—These certificates, copies of which were attached to the case stated, were issued on April 10, 1883, and each of them contained the following paragraph: "This certificate is recorded in the Farmers and Mechanics National Bank of Philadelphia, countersigned by the president, cashier, or assistant cashier, and transfer officer thereof, and is transferable upon the surrender thereof upon the books of the said bank by the owner in person, or by attorney, according to the rules and forms prescribed for that purpose."

The power of attorney, a copy of which also was supplied, was executed in the ordinary form authorizing James S. Swartz, as the plaintiff's attorney, " to make and execute all necessary acts of assignment and transfer," etc. It was signed and acknowledged on August 28, 1888, by the plaintiff alone and as though she were an unmarried person, before a commissioner of deeds for the state of Pennsylvania residing in New York.

After argument of the case stated, the following opinion was filed, ARNOLD, J :

When the legislature, by the act of April 11, 1848, § 6, P. L. 536, enacted that the property of a single woman shall continue to be her property after her marriage as before, and shall be owned, used, and enjoyed by her as her own separate property, and shall not be subject to levy and execution for the debts of her husband, nor sold, conveyed, mortgaged, trans-

ferred, or in any manner encumbered by her husband, without her written consent, that body was in honor bound to give her the means of exercising her right, without let or hindrance by any one ; for a right, without the power of using and enjoying it, would be but a vain and delusive shadow and not a reality. Indeed, it was thought that the act of 1848 fully secured to a married woman the right to use and enjoy her separate real estate, if there was no trustee in the way and her husband joined in the deed, and so it was decided in Haines v. Ellis, 24 Pa. 253, and Penna. Co. v. Foster, 35 Pa. 134 ; but those cases were overruled by Wright v. Brown, 44 Pa. 224, a decision which was restricted by the act of April 22, 1863, P. L. 533, so as to save all those deeds of married women which were made while Haines v. Ellis was the adjudged law. But that act does not validate a deed of real estate made by a married woman and her husband, when she derives title under a will which expressly provides that she shall not sell or convey it: Shonk v. Brown, 61 Pa. 320 ; act of April 10, 1867, P. L. 67.

The positive enactment that the property of a married woman shall not be subject to levy and execution for the debts of her husband, did not seem plain enough for some persons, whereupon the legislature enacted the act of April 22, 1850, § 20, P. L. 553, to prohibit creditors of married men from levying upon and selling their prospective rights as tenants by the curtesy. But even that was insufficient, for the creditors aforesaid claimed that, even if they could not take such rights in execution, they nevertheless had a lien upon them, which might survive the wife, and thus prevented her from selling and conveying her own estate, even with her husband's consent, clear of his debts ; and therefore the legislature again intervened, and by the act of April 1, 1863, P. L. 212, declared that no judgment against the husband of any married woman shall be a lien upon her real estate or his interest as tenant by his curtesy. Here the struggle over the real estate of a wife ceased, leaving her in full possession of her real property, but still unable to use or enjoy it by sale or mortgage, except by leave of her husband.

Concerning personal property, the necessity for permitting a married woman to own, use, and enjoy that freely, without

Opinion of Court below.

regard to her husband, soon became manifest; but the remedy was doled out in small quantities at a time. The act of April 11, 1856, P. L. 315, authorizes her, if deserted by her husband or divorced from bed and board, to protect her reputation by an action for slander or libel, even against her husband. She was also made secure in the right to her separate earnings while in such condition, and was authorized in person or by attorney to execute a refunding bond and release for property inherited by or bequeathed to her. By the act of June 2, 1871, P. L. 283, she was authorized to sell and transfer any shares of stock owned by her in any railroad company; by the act of February 29, 1872, P. L. 21, to make a contract for the purchase of sewing machines, without drawing her husband into the bargain; and by the act of April 3, 1872, P. L. 35, her separate earnings were still further secured to her against the claims of her husband or his creditors, on application to the Court of Common Pleas. By the act of May 15, 1874, P. L. 193, minors and married women are permitted to deposit money in bank and draw it out on their own check or order, without interference by the guardian of the minor or the husband of the married woman. The act of April 1, 1874, P. L. 49, amended by the act of March 19, 1875, P. L. 24, enables any marrie woman owning loans of this commonwealth or the city of Philadelphia, or any loan or share of the capital stock of any corporation created by the laws of this commonwealth, to sell and transfer them the same as if she were unmarried.

The constitutionality of these last two acts was questioned by the learned counsel of the defendant, but as they apply to all married women, and we can find no provision of the constitution to prohibit their enactment, we do not doubt that they are constitutional. In amending a law it is not necessary to repeal and then re-enact it, but it must be re-enacted and published at length, with the amendments interwoven or added, or omitting portions of the act. A bill may be repealed by its title or by subsequent repugnant legislation. Article III., § 6, of the constitution does not contain the word repeal.

Two acts approved the same day, May 25, 1878, P. L. 152 and 154, enable a married woman to sell, assign, and transfer or satisfy any mortgage or judgment owned by her; and to make deeds or mortgages of her real estate, if her husband is

a lunatic, so found by inquisition, but still subject to her husband's rights (whatever they may be) to be exercised by his committee, by authority of the court, thus heaping burdens upon her misfortune. By the act of June 12, 1878, P. L. 206, a married woman, if deserted by her husband, may be sued alone ; and by the act of June 11, 1879, P. L. 126, a married woman, if deserted, abandoned, or driven from home, may bring suit in her own name against her husband or any other person, and may assign, transfer, and indorse mortgages, judg-ments, bonds, or notes, against her husband or any other person.

Weary, no doubt, of all this legislation by piecemeal, the legislature passed the Married Person's Property Act of June 3, 1887, P. L. 332, which enacts that " every married woman shall have the same right to acquire, hold, possess, improve, control, use or dispose of her property, real and personal, . . . . . in the same manner as if she were a feme-sole ; . . . . . provided, however, that a married woman shall have no power to mortgage or convey her real estate, unless her husband join in such mortgage or conveyance." It is also provided that " a married woman may make, execute and deliver leases of her property, real and personal, and assignments, transfers and sales of her separate personal property, and notes, bills, drafts, bonds or obligations of any kind, and appoint attorneys to act for her, and it shall not be necessary for her husband to be made a party thereto or joined therein."

It may now be regarded as reasonably certain, that so far as legislation is concerned, the personal property of a married woman, in this state, is secure from the control of her husband and the grasp of his creditors, and that she may sell and trans-fer it, in person or by attorney, without the joinder of her husband. As to her real estate, while she is given the right to acquire, use, or dispose of it, yet she cannot exercise her right to dispose of it unless her husband joins in the deed ; a right conferred, and the power to exercise it withheld, unless her husband is willing to oblige her. And likewise a married man, who deals in real estate as an article of trade, must take his wife along in every deal, under a rule of law which never was of any value to a married woman in Pennsylvania, as her husband can by mortgage or judgment and sheriff's sale, cut out

her interest if she violates her marriage vow by disobeying him.

The courts have not been behind the legislature in making the law conform to the changes in the condition and necessities of the people, by emancipating married women from the shackles of the iron rule of law; and it may now be said that, by the aid of equitable principles, the consequences of the unity of husband and wife have been abolished, so far as their property is concerned, thereby leaving the matrimonial bond intact, uniform, and strengthened; for a sacramental union which is so weak as to require financial cement to bind it, cannot be made stronger by the law. The innumerable suits on jointures and settlements sufficiently prove that. Disputes about property have given rise to more suits between husband and wife than any other cause. When it is known that neither has any right to the property of the other during life, it may be expected that unfounded claims to each other's property will not be so numerous.

A reference to a few of the decisions will show their origin, growth and extent. A married woman may acquire property from her husband and hold it against his subsequent creditors, without a trustee. She may lend him money and take his note for it. She may maintain an action against her husband, obtain a judgment against him, and issue execution thereon. He may make a deed to her, without a trustee, and it will be sustained in equity. The harsh consequences of material unity upon a wife's property, cannot stand before the breath of equity. See the decisions before and since the act of 1848, in Towers v. Hagner, 3 Wh. 48; McKennan v. Phillips, 6 Wh. 571; Fisher v. Filbert, 6 Pa. 66; Kutz's App., 40 Pa. 94; Williams's App., 47 Pa. 307; Ziegler's App., 84 Pa. 342; Bedell's App., 87 Pa. 510; Rose v. Latshaw, 90 Pa. 238; Lahr's App., 90 Pa. 510; Thompson v. Allen, 103 Pa. 44; Kincade v. Cunningham, 118 Pa. 501, and 22 W. N. 459. The rule of law that on a gift to a husband and wife and a third person, the husband and wife take only one moiety and the third person takes the other, is no longer applicable in England under the Married Women's Property Act of 1882, after which our act is patterned: Mander v. Harris, L. R. 24 Ch. D. 222.

Under this state of the law, we are informed by the case

Opinion of Court below.

stated that the plaintiff, Mrs. S. Josephine Loftus, nèe Leech, who was born in the city of Philadelphia, was married in Italy, in the year 1880, to Henry J. Loftus, a subject of Great Britain. On April 10, 1883, she became the owner of $21,000 of the loans to the city of Philadelphia, which represented property which she owned before her marriage. On August 28, 1888, she sold $16,000 of said loan to Messrs. Drexel & Co., and by letter of attorney annexed to the bill of sale and executed the same day, in the city of New York, she appointed James S. Swartz her attorney irrevocable, to assign and transfer the said loan. On presenting that letter of attorney to the defendant, the transfer agent of the city of Philadelphia, the right to make the transfer was denied, because the husband of the plaintiff had not joined in appointing the attorney, whereupon this suit was commenced, and the question for determination is, what law governs in the matter; the law of Pennsylvania, where the debt is to be paid; of England, where the husband of the plaintiff, and consequently the plaintiff, is domiciled; of Italy, where the marriage took place; or of New York, where the letter of attorney was executed? We may dismiss the claims of Italy and New York without discussion, and consider those of Pennsylvania and England only. The law of the latter may govern in the devolution of her personal estate on her death, but the law of Pennsylvania alone controls in the matter of the use, enjoyment, and disposition of her estate during her life.

In Story's Confl. of Laws, § 383, 8th ed., 542, it is said: "It follows as a natural consequence . . . . . that the laws of the owner's domicile should, in all cases, determine the validity of every transfer, alienation, or disposition made by the owner, whether it be inter vivos or be post mortem. And this is regularly true, unless there is some positive or customary law of the country where they are situate, providing for special cases (as is sometimes done), or from the nature of the particular property it has a necessarily implied locality. Lord MANSFIELD has mentioned, as among the latter class, contracts respecting the public funds or stocks, the local nature of which requires them to be carried into execution according to the local law. The same rule may apply to all other local stock or funds, although of a personal nature, or so made by the local law, such

as bank stock, insurance stock, turnpike, canal, and bridge shares, and other incorporeal property, owing its existence to or regulated by peculiar local laws. No positive transfer can be made of such property, except in the manner prescribed by the local regulations." In a foot-note (*a*) on page 543, it is said: "The exceptions to the maxim, mobilia sequuntur personam, have become so numerous, that it cannot be safely invoked for the decision of any but the simplest cases, at the present day; if, indeed, a case can ever be safely decided on a maxim. The exceptions would probably be less frequent if the maxim were, lex situs mobilia regit."

But a transfer made according to the law of the domicile, though not by the lex situs, should be respected everywhere: Vanbuskirk v. Insurance Co., 14 Conn. 583 (36 Am. Dec. 473); Clark v. Peat Co., 35 Conn. 303; Rhode Island Bank v. Danforth, 14 Gray 123; Mulliken v. Aughinbaugh, 1 P. & W. 117; Speed v. May, 17 Pa. 91; Law v. Mills, 18 Pa. 185; Steel v. Goodwin, 113 Pa. 288; Crapo v. Kelly, 16 Wall. 610. In Milne v. Moreton, 6 Binn. 361, Chief Justice TILGHMAN said: "Every country has the right of regulating the transfer of all personal property within its territory; but when no positive regulation exists, the owner transfers it at his pleasure. . . . An assignment by law has no legal obligation out of the territory of the lawmaker. But, by the courtesy of nations, founded on principles of mutual convenience, the laws of one country are sometimes regarded in another."

As we have in Pennsylvania a positive law declaring how a married woman may dispose of her personal property, that is, the same as if she were unmarried, and as it is not necessary for her husband to be made a party to the transfer, we are of opinion that for this reason, the plaintiff is entitled to transfer the loan in question by her attorney appointed by herself, without the joinder of her husband, and that the defendant is wrong in refusing to permit her to make the transfer in that mode. No substantial right of any husband is injured by declaring that the act of 1887 applies to marriages existing when it was passed. The act of 1848 was so applied, where the husband had not reduced his wife's personal property into possession, and since that act he cannot do so. In Mellinger v. Bausman, 45 Pa. 522, Mr. Justice STRONG said: "It has often

Opinion of Court below.

been said, and several times ruled, that the act of 1848 did not divest any interest of a husband vested in him when the act was passed. . . . . But the marital right of a husband over his wife's chose in action never was an interest in it. It was no more than succession to her dominion. He had not even a qualified property. He had nothing more than a naked power. No interest in the chose vested in him until he had exercised his power by applying it to his own use. No vested interest, no right of property of his is interfered with, though the act of 1848 takes away his dominion over a chose in action possessed by his wife when the act is passed."

So we say here, that the act of 1887, in dispensing with the consent of a husband to the transfer of personal property by his wife, or the appointment by her of an attorney for that purpose, takes away no interest or estate of the husband, and, therefore, that it furnishes the rule for making the transfer in this case. The Married Women's Property Act of England (1882) has been held to apply to marriages existing when it went into effect: Baynton v. Collins, L. R. 27 Ch. D. 604; Thompson v. Curzon, L. R. 29 Ch. D. 177.

But there is another reason. The certificates of loan held by the plaintiff are contracts for the payment of money at a future date. The obligation is a contract to be performed in the city of Philadelphia, and by numerous authorities it is settled that the law of the place of performance of a contract is the law to be applied in the enforcement of it: Story on the Confl. of Laws, §§ 280, 314 and notes; Benners v. Clemens, 58 Pa. 24; Brown v. Railroad Co., 83 Pa. 316; Mills v. Wilson, 88 Pa. 118; Brooke v. Railroad Co., 108 Pa. 529; Tenant v. Tenant, 110 Pa. 478; Tilden v. Blair, 21 Wall. 241; Scudder v. Union N. Bank, 91 U. S. 406; Pritchard v. Norton, 106 U. S. 124; Call v. Palmer, 116 U. S. 98. The enforcement of a contract necessarily includes the right to transfer the claim, and to appoint an attorney for the purpose. The city of Philadelphia is not a trading corporation. It is a municipality which must be sued in the courts having jurisdiction over the place in which it is located. It cannot be sued elsewhere. Therefore, the law of Pennsylvania governs in contracts to be performed by it.

The case cited by the defendant, Davis v. Zimmerman, 67

Pa. 70, was a dispute whether the property in suit belonged to a husband or his wife, and not a contest about his right to her property. The property was bought by the wife on credit, in a state in which the common law prevailed, and, consequently, it belonged to him and could be taken in execution for his debts. Her credit was his credit. That case has no application here.

If the question were new in every aspect, and we were without authorities or analogies to aid us, we would feel bound to establish the rule as we find it laid down in the books. The difficulty, danger, and inconvenience which would result from requiring transfers of property and the execution of powers of attorney to be regulated by the various laws of the different states, territories, and foreign nations are incalculable, and furnish one of the strongest reasons for ruling as we do in this case, that the power of attorney executed by Mrs. Loftus is valid under the law of this state, and that her attorney is entitled to make a transfer of the loans held by her.

Judgment will, therefore, be entered in favor of the plaintiff for the amount agreed upon in the case stated.

Judgment having been entered in accordance with the foregoing opinion, the defendant took this appeal, specifying that the court erred:

1. In entering judgment for the plaintiff.

2. In not entering judgment for the defendant.

*Mr. R. L. Ashhurst* (with him *Mr. Rowland Evans*), for the appellant:

1. That such a power of attorney as the one here in question, is invalid by the common law, is quite clear. Under § 6, act of April 11, 1848, P. L. 536, and § 1, act of May 14, 1874, P. L. 158, it is requisite to its validity, first, that there be a separate acknowledgment in due form to show that the wife's volition was independent, and, second, that the husband in some form become a party to or manifest his approval of its execution: Leiper's App., 108 Pa. 377. Neither the act of April 1, 1874, P. L. 49, nor that of March 18, 1875, P. L. 24, can have any effect upon the present case.

2. In the first place, those acts do not give a married woman

any power to appoint an attorney to make transfers, and even if they do give her power to make the transfers in person, it may well be questioned whether they repeal the acts of April 11, 1848, and May 14, 1874, as to the requisites of a written instrument for the transfer of· her property. In the second place, neither of these acts is constitutional. The act of April 1, 1874, is special legislation, in that the only city in the state whose loans are affected by it is the city of Philadelphia. It is doubtful whether it would be valid, even if it attempted to legislate as to the loans of cities of the first class : Philadelphia v. Pepper, 115 Pa. 291 ; Betz v. Philadelphia, 21 W. N. 155. So, the only city within the act of 1875 is Philadelphia, the collocation and context showing that the other corporations referred to in it do not include municipal corporations.

3. This brings us to the act of June 3, 1887, P. L. 332, and the case must be decided according to its applicability or nonapplicability. We submit that the court was in error in holding that it applied to women living out of the commonwealth. Its title and the breadth and scope of its language show that its intent and effect are and must be confined to citizens and residents of the commonwealth. It does not purport to concern property or its devolution. The subject matter is the relation and status of married women, and only indirectly does the act deal with property as affected by that relation and status. It cannot be supposed that the legislature intended to regulate the status of foreign married women, and the attempt to do so would be nugatory on its face.

4. The court below fell into error in supposing that what was taken to be the lex loci contractus would govern in this case. Granting, for argument's sake, that the bond constitutes what may be regarded as a Pennsylvania contract, and disregarding the question whether any modification of the manner of payment or discharge of the contract may be made by statute, it is clear that no question arises here upon the contract; there is no question between Mrs. Loftus and her debtor, the city, but the question is one between her and the bank as to the validity of an attempted transfer of the chose in action, and the validity and effect of such a transfer by the voluntary act of the owner is determinable by the law of the owner's

Arguments.

domicile: Milne v. Moreton, 6 Binn. 359; Mulliken v. Aughinbaugh, 1 P. & W. 124; Hanford v. Paine, 9 Am. Law R. 553; Speed v. May, 17 Pa. 91.

5. The doctrine of Speed v. May was recognized in Steel v. Goodwin, 113 Pa. 291, though the application of the principle in the latter case was restrained by the express modification of the lex fori, requiring record of a foreign assignment here. The doctrine is sustained also by Crapo v. Kelly, 16 Wall. 610; Davis v. Zimmerman, 67 Pa. 72; Reid v. Gray, 37 Pa. 508; Kohne's Est., 1 Pars. 399; Story's Confl. of Laws, § 52. See also Fowler's App., 125 Pa. 390. The decisions on the subject of collateral inheritance tax are important, as showing to what extent the doctrine that the transferability of personal property is governed by the lex domicilii, is carried, even as against the commonwealth's claims: Commonwealth's App., 11 W. N. 492. If we are right so far, the law of Great Britain as to such transfers as this is material, and we contend that under the statute 37 & 38 Vict. c. 50, in force at the time of the plaintiff's marriage, her husband had a qualified vested interest in her choses in action, not taken away by the later act of 45 & 46 Vict. c. 75.

*Mr. William W. Porter* (with him *Mr. Henry B. Robb*), for the appellee:

1. The act of March 19, 1875, P. L. 24, amending that of April 1, 1874, P. L. 49, as it specifically confers the power to make transfers of loans, by implication confers also the attendant powers necessary to the exercise of the principal one, including the power to execute a letter of attorney to transfer. The contention that the act is not constitutional scarcely requires notice. By simply striking from it the words " or of the city of Philadelphia," it will be made to apply to the loans of all corporations of every kind created under the laws of this state. By the act of June 3, 1887, P. L. 332, the last vestige of the husband's control over the wife's property is swept away, and no doubt remains that a married woman can execute a valid power of attorney without the joinder of her husband, and without evidence of his assent.

2. There is nothing in the facts of this case to make it an exception to the general rule. The decisions under the act of

Opinion of the Court.

April 11, 1848, P. L. 536, make it clear that a husband has no vested interest in his wife's property during her life, and accordingly that act was held to apply to marriages existing at its date: Mellinger v. Bausman, 45 Pa. 529; McVaugh v. McVaugh, 10 Phila. 458. The act of 1887 must therefore be held so to apply. The only remaining question is, whether the, law of England or that of Pennsylvania shall govern under the facts of the case. It is true that the law of the domicile does in some cases apply, but, as stated in the opinion of the court below, contracts respecting public funds or stocks, the local nature of which requires them to be carried into execution according to the local law, are an exception to the usual rule.

8. Again, the original contract of loan having been made in Pennsylvania, the law of this state alone can govern it. The power to transfer is simply an incident to that contract, and the law applying to the transfer must be that of the place where the loan was made: Milliken v. Pratt, 125 Mass. 374; Scudder v. Bank, 91 U. S. 406; Brooke v. Railroad Co., 108 Pa. 529; Tenant v. Tenant, 110 Pa. 478; Story on Conf. of Laws, 8th ed., 107, note (a). Moreover, the certificates of loan are contracts to be performed on a future date at a particular place, the city of Philadelphia, and the law of the place of performance must govern: Brown v. Railroad Co., 83 Pa. 318; Tenant v. Tenant, 110 Pa. 478; Pritchard v. Norton, 106 U. S. 124; Scudder v. Bank, 91 U. S. 406; Call v. Palmer, 116 U. S. 98; Mullen v. Morris, 2 Pa. 85; Allshouse v. Ramsay, 6 Wh. 331; Wharton on Confl. of Laws, § 401; Story on Confl. of Laws, § 233. If, however, the case is to be determined by the law of Great Britain, the act of 45 & 46 Vict. c. 75, determines it absolutely in our favor: 1 White & Tudor Lead. Cas. in Eq., 536, ed. of 1886.

OPINION, MR. JUSTICE MITCHELL:

The settled general rule is that the validity of a transfer of personal property is to be determined by the law of the domicile of the owner. And this is especially so in regard to the capacity to pass the title, in cases of infants, married women, or others who may be under legal disabilities, varying in different countries. " A married woman's capacity for the alien-

Opinion of the Court.

ation of movables depends in general upon the law of her domicile:" Dicey on Domicile, Rule 38, p. 195. The defendant in error, though by birth a citizen of Pennsylvania, by her marriage lost her domicile here, and acquired the domicile of her husband, which is English. It is entirely clear, therefore, that her general rights, capacities, and disabilities as a married woman, in regard to her personal property, are governed by the laws of Great Britain, and are not affected by the laws of Pennsylvania. No assistance, therefore, in the determination of this case, can be got from the act of June 3, 1887, P. L. 332. That act relates to the rights and powers of married women over the control and disposition of their separate property. But the only married women whose rights and capacities the legislature of Pennsylvania has any power to regulate, are those within the commonwealth, and it cannot be assumed that the act was intended to apply to any others.

How far the lex loci contractus might affect the rights of property arising therefrom, it is not necessary to consider, as the marriage in this case took place abroad, and the husband did not, even by the place of the contract, become subject to the laws of Pennsylvania.

But while the general rule, as above stated, is entirely settled, not only in this state, but in every jurisprudence founded on the common law, yet it is subject always to the power of the state to declare otherwise as to any property having an actual or legal situs within its borders. The title and mode of transfer of land are always governed by the lex loci rei sitæ; and personal property may be assimilated to land, in these respects, whenever the law of any state so determines. In Milne v. Moreton, 6 Binn. 353, 361, Chief Justice TILGHMAN said: "The assignees . . . . . stand upon this principle, that personal property has no locality, but is transferred according to the law of the country in which the owner is domiciled. This proposition is true, in general, but not to its utmost extent, nor without several exceptions. In one sense, personal property has locality; that is to say, if tangible, it has a place in which it is situated, and if invisible, (consisting of debts,) it may be said to be in the place where the debtor resides; and of these circumstances the most liberal nations have taken advantage, by making such property subject to regulations which

Opinion of the Court.

suit their own convenience. In cases of intestacy, the property is distributed according to the law of the domicile of the intestate. But yet, so far as concerns creditors, it depends on the law of the country where it is situated. . . . . Every country has the right of regulating the transfer of all personal property within its territory, but when no positive regulation exists the owner transfers it at his pleasure." And see observations of GIBSON, C. J., in Mulliken v. Aughinbaugh, 1 P. & W. 124, and in Speed v. May, 17 Pa. 94; of King, P. J., in Merrick's Est., 2 Ash. 485; Smith's App., 104 Pa. 381; and Bacon v. Horne, 123 Pa. 452. Indeed, it may be said that the tendency of modern authorities, under the influence of the European continental jurisprudence, is towards the recognition of the law of the situs, to such an extent that what was an exception is tending to become the rule. See note to the late editions of Story on Confl. of Laws, § 383; Whart. on Confl. of Laws, §§ 346–353, and cases there cited; Westlake on Private International Law, § 141. Even Dicey, a common-law writer whose clear and accurate pages are as refreshing as the blue sky after the foggy disquisitions of Story and Wharton, generalizes the rule as to creditors to which the Pennsylvania cases above cited adhere, in this form : "Where there is a conflict between a title, under the law of the country where a movable is situated, and under the law of the owner's domicile, the lex situs will in general prevail." Dicey on Domicile, Rule 57, p. 262.

In accordance with this tendency, the legislature of Pennsylvania, by act of March 18, 1875, P. L. 24, declared that it shall be lawful for any married woman owning any of the loans of this commonwealth, or of the city of Philadelphia, etc., to sell and transfer the same with like effect as if she were unmarried. This act rules the present case. Its intention is not so much to enlarge the capacity of a married woman to deal with her property, as to regulate the mode of transfer of certain kinds of property owing their existence to Pennsylvania law and having their legal situs in this commonwealth. Being a regulation of property made for the public safety and convenience in the transaction of business, it is applicable to all owners of the classes of property named, though it may thus incidentally enlarge the powers of some foreign or non-resident

Opinion of the Court.

wives. The direction is peremptory and without exception, that the transfer shall have the same effect as if she were unmarried; and, as the purpose of the act is the public convenience, no construction should be given to it which would operate against that purpose. The authority to transfer, therefore, must be construed to carry with it all the necessary powers to make it effective, and among these is the power to do it by attorney.

The same considerations dispose of the objection to the constitutionality of the act of 1875 that it relates only to the loans of the city of Philadelphia among municipal corporations. The act is not a regulation of the affairs of the city of Philadelphia, within the meaning of article III., § 7, of the constitution. As already said, it is the regulation of the mode of transfer of certain kinds of property for the public business convenience. It includes the loans of the commonwealth itself, and of all corporations chartered by its authority; and the power to include such city loans as the public convenience required is nowhere prohibited to the legislature.

In the view we have taken, it is not necessary for us to consider the power of Mrs. Loftus under the English statute of 45 and 46 Vict., c. 75, further than to say that that act appears to confer upon married women ample authority to make transfers such as the present. But, as the construction of foreign statutes is a matter that courts never enter upon unless absolutely necessary, and as the plaintiff's authority under the act of 1875 is clearly sufficient, we rest the case upon that act.

Judgment affirmed.