In re CIRCLE TRADING CORPORATION.

Circuit Court of Appeals, Second Circuit.
May 7, 1928.

No. 234.

1. Bankruptcy ⬥163—Transaction by which bank took bill of sale to bankrupt's property and appropriated proceeds constituted voidable preference, where bank financing bankrupt's purchase had no security title.

Where bank, having reasonable cause to believe that corporation was insolvent took bill of sale of all its tangible assets and paid its own notes from proceeds of bill of sale, bank was guilty of illegal preference as to the corporation's trustee in bankruptcy, where it had not obtained valid security title to the merchandise prior to that which it received under the bill of sale.

2. Bankruptcy ⬥303(1)—Bank taking proceeds of bankrupt's property had burden to establish anterior security title to disprove preference.

Bank, which took bill of sale to bankrupt's property and used proceeds for payment of its notes, had burden to establish valid security title to the merchandise covered by the bill of sale antedating the sale, in order to avoid trustee's claim of preference.

3. **Bankruptcy ⬦⟹303(4)—Bank, taking trust receipt covering balances due on unidentified items imported by bankrupt into foreign country, did not establish security title so as to permit subsequent appropriation of proceeds to its debt.**

Bank, which originally financed purchase of goods shipped from Germany to Argentine and paid for by drafts of seller in Germany accepted by the bank, did not establish valid security title to the merchandise purchased by the bankrupt so as to avoid claim of preference on subsequently applying proceeds of sale thereof on its notes, where it was not shown that the goods included in the bill of sale to the bank were covered by trust receipts, but trust receipt merely aggregated balances due on original importations, and did not show how far the goods had been paid for by the bankrupt, and where bank failed to prove that it had received security title recognized by the foreign law.

4. **Bankruptcy ⬦⟹163—Foreign law applies in construing trust receipts on question of preference.**

As respects question of preference to bank, where goods purchased were forwarded from Germany to Argentine, and security title of bank financing purchase would be based on letter of credit agreements or trust receipts taken after arrival of goods in Argentine, agreement would be governed by foreign law.

5. **Evidence ⬦⟹37—It is common knowledge that civil law prevails in Argentine and does not recognize ordinary trusts.**

It is common knowledge that the civil law prevails in the Argentine, and that trusts in the ordinary sense are unknown to that law.

6. **Bankruptcy ⬦⟹303(1)—Bank financing bankrupt's purchase of goods forwarded to Argentine had burden to prove security title recognized by foreign law.**

Bank seeking to avoid claim of preference as to proceeds of sale of bankrupt's goods, by showing that it financed bankrupt's purchase of the goods and retained valid security title, had burden to show that it received a security title recognized by foreign law, where goods were forwarded from Germany to Argentine.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the Circle Trading Corporation, bankrupt. Proceeding by Harry Zalkin, as trustee in bankruptcy, for the disallowance of a claim filed by the First National Bank of Boston. From an order of the District Court affirming the order of the referee in bankruptcy, which disallowed the claim until the bank should surrender its preference, the bank appeals. Affirmed.

Wing & Russell, of New York City (Burt D. Whedon and Richard Bennett, Jr., both of New York City, of counsel), for appellant.

John J. Schwartz, of New York City (Irving L. Ernst, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. [1] The bank had reasonable cause to believe that the Circle Trading Corporation was insolvent when it took a bill of sale of all its tangible assets at $35,000, and the check was used to pay off notes of the Circle Trading Corporation which the bank held, representing balances due. If nothing more had been shown, there clearly would have been an illegal preference. But the bank answers the contention that these payments constituted a voidable preference by saying that it had originally financed the purchase of the goods embraced in the bill of sale on behalf of the Circle Trading Corporation, that these goods had been shipped from Germany to Buenos Aires and paid for by drafts of the German vendor accepted by the bank, and that the latter held agreements whereby it obtained a valid security title to the merchandise anterior to any which may have come to it through the bill of sale. In other words, the bank relies on such decisions as In re Dunlap Carpet Co. (D. C.) 206 F. 726, and In re Fountain (C. C. A.) 282 F. 822, 25 A. L. R. 319, recognizing the validity of so-called "trust receipts."

[2, 3] There are two difficulties with the bank's position. The first is that the prima facie case of an unlawful preference is not met by any sufficient proof that the goods included in the bill of sale were covered by trust receipts. Charles J. Koller, the president and treasurer of the Circle Trading Corporation, testified that it was possible that some of the items in the bill of sale had been fully paid for by that company, and that he made no inquiry before executing the bill of sale to find out whether any of the items were fully or partially paid for. To establish the bank's position, the original importations financed by the bank must be separately identified, and the amount paid on account of each item of merchandise shown. This was not done. The trust receipt of May 14, 1925, was taken long after most of the importations from Germany to Buenos Aires which had been financed by the Boston bank. It was confessedly an aggregation of balances due on original importations, and no proof was made of how far the goods included in it had been paid for when the bill of sale was delivered January 13, 1926. Koller testified that he could not "identify any item in the bill of sale as being a specified item in the trust receipts." It seems impossible to determine whether the goods embraced in the bill of sale were old importations, which had been paid for, or

were other more recent importations, against which the bank might make some claim to a security title. If the bank cannot rely on its title under the bill of sale, but attempts to establish a security title, it necessarily has the burden of proving it. This it did not do.

[4] But the second difficulty is due to the fact that the goods were forwarded from Germany to the Argentine, and any security title would be based either on letter of credit agreements providing for retention of title in the bank or on trust receipts having similar provisions taken by the bank after the arrival of the goods at Buenos Aires. Either form of agreement would relate to merchandise outside of this jurisdiction, and would be governed by a system of law fundamentally different from ours. Dicey, Conflict of Laws (3d Ed.) p. 561, rule 152; Hervey v. Rhode Island Locomotive Works, 93 U. S. 664, 23 L. Ed. 1003; Corbett v. Riddle (C. C. A.) 209 F. 811; Cooper v. Philadelphia Worsted Co., 68 N. J. Eq. 622, 60 A. 352; Loftus v. Farmers' & Mechanics' Bank, 133 Pa. 97, 19 A. 347, 7 L. R. A. 313; Cammell v. Sewell, 5 Hurl. & N. 728; Alcock v. Smith (1892) L. R. 1 Ch. Div. 267.

[5, 6] Indeed, the bill of sale was taken because the Argentine Branch of the First National Bank of Boston telegraphed suggesting a purchase by the bank of the merchandise in Buenos Aires, because the trust agreements would have no legal standing there. It is common knowledge that the civil law prevails in the Argentine, and that trusts in the ordinary sense are unknown to that law. If the bank relied on agreements governed by a system of law quite different from ours, it had the burden of going forward with proof to show that it had in fact received a security title recognized by the foreign law. This it did not even attempt to do. Nale v. Roberts, 1 Esp. 163; Thompson v. Ketchum, 8 Johns. (N. Y.) 190, 5 Am. Dec. 332; Aslanian v. Dostumian, 174 Mass. 328, 54 N. E. 845, 47 L. R. A. 495, 75 Am. St. Rep. 348; Parrot v. Mexican Central Ry., 207 Mass. 184, 93 N. E. 590, 34 L. R. A. (N. S.) 261; Riley v. Pierce Oil Corporation, 245 N. Y. 152, 157 N. E. 877; In re Hall, 61 App. Div. 273, 70 N. Y. S. 406. See, also, the article by Albert M. Kales, entitled Presumption of the Foreign Law, 19 Harvard Law Review, 401.

The bank having received a voidable preference when it was paid its notes from the proceeds of the bill of sale, and having established no security title, was properly not allowed its claim, unless such preference should be surrendered. Bankruptcy Act, § 57g (11 USCA § 93(g).

The order is affirmed.