FIRST TRUST COMPANY OF ST. PAUL v. MARTHA M. MATHESON AND OTHERS.[1]

December 16, 1932.

No. 29,083.

[1]Reported in 246 N. W. 1.

*Kellogg, Morgan, Chase, Carter & Headley,* for appellant.

*J. A. Mansfield, S. M. Bryan,* and *Godley & Olson,* for respondents.

Stone, J.

Plaintiff appeals from an order granting a motion by defendants (appearing specially and only for the motion) vacating substituted service of summons.

July 1, 1921, Malcolm Matheson, now deceased, created an express trust embracing personal property consisting mostly of government, municipal, and industrial bonds. June 14, 1923, that trust was abrogated and a new one substituted. Plaintiff is a Minnesota corporation, authorized to accept and administer such trusts. Since the first trust was created, and under the new trust of 1923, the securities have been and remain in the custody of the trustee in St. Paul. There both trusts have been administered. There the second trust, the subject matter of this action, remains in the course of administration by plaintiff as trustee.

The trust property now consists, aside from a cash item, of unregistered bonds payable to bearer. Some are government bonds, foreign or domestic, and others the obligations of municipalities or private corporations. The trust instrument of June 14, 1923, after declaring that the trustee "shall hold, possess, care for and manage such securities," and directing investment and reinvestment of principal and collection of interest, provides that the net income shall go to the settlor, Matheson, during his life. Upon his death it was to be paid to his wife, Martha Marie Matheson, if she survived, until her death or remarriage. Other provisions providing for

other contingencies, designating other contingent beneficiaries, and for the termination of the trust, need not be gone into.

The complaint avers that Matheson, then a resident of California, departed this life in May, 1931, leaving him surviving as his heirs at law defendants, Martha M. Matheson, widow and first beneficiary of the trust, Hugh Malcolm Matheson, only child by said Martha M. Matheson, and Robert H. Matheson, James K. Matheson, and Malcolm Matheson, Jr., his children by a former marriage. Martha M. Matheson is made defendant both as individual and administratrix of Malcolm Matheson's estate in California.

It is alleged that Malcolm Matheson, Jr., through counsel, claims that the trust indenture of 1923 is invalid; that in consequence the securities supposedly subject thereto are part of the estate of Malcolm Matheson, Sr.; that Malcolm, Jr. is threatening litigation to have it so adjudged; and "to compel the plaintiff individually to reimburse the estate of said decedent for any money or property paid or distributed under said trust indenture." Plaintiff also states that since receipt of such notice and threats it has for its own protection withheld all income and must so continue until the issue is determined by a court of competent jurisdiction. Judgment is prayed establishing the validity of the trust; subject thereto, quieting in plaintiff title of the trust property, and excluding defendants from any and all right, title, or interest therein except as granted by the trust indenture. There is the usual prayer for general relief.

The trust is express and authorized by statute. G. S. 1923 (2 Mason, 1927) § 8090(5). If it is valid, the legal title of the property is in plaintiff as trustee. This is not one of the cases where by statute (G. S. 1923 [2 Mason, 1927] §§ 8083, 8084, and 8093) the trustee does not get legal title.

Defendants are residents of California. Service upon them was by the substituted method authorized by a statute later considered. The order below is unaccompanied by anything to indicate the ground of decision. We take it that the action was considered, erroneously, we think, one exclusively in personam, so that the substituted service was without effect.

■ Defendants' argument denies that state jurisdiction can grant plaintiff any relief. It is well, therefore, at the outset and by way of orienting consideration, to recognize that sovereign power may lay hands on any and all persons or property within its territory. So where, as with us, the functions of sovereignty are departmentalized, it simply must be that if a person or thing is within reach of legislative mandate or executive action, he or it must be within reach of the judiciary also. Chattels are as much subject to sovereign action, legislative, executive, or judicial, as real property. The latter, by immobility, is anchored in one jurisdiction. Personalty has no such anchorage. But that in no wise immunizes it from the action of any sovereign who can in fact lawfully lay hands on it.

The difference between realty and personalty in this respect is solely in differing fact attributes and not at all in subjection to or immunity from appropriate governmental action—legislative, executive, or judicial. Save as limited by the constitution of the United States, Minnesota is an independent state with all powers of sovereignty. The dominion of any state over chattels having a situs within its borders is "complete." Green v. Van Buskirk, 7 Wall. 139, 150, 19 L. ed. 109. Never has there been legal thought otherwise, except as matter of comity and in recognition of the maxim "mobilia sequuntur personam." Of Roman birth, and so native to the civil law, it became naturalized in the common law. Always a fiction, never more, it has had force of law only through comity and because of necessity that states yield to each other in matters of jurisdiction wherever possible in order to reduce to a minimum the area of irreconcilable conflicts. Under compulsion of change, "that rule has yielded more and more to the lex situs, the law of the place where the property is kept and used." Swedish-Am. Nat. Bank v. First Nat. Bank, 89 Minn. 98, 113, 94 N. W. 218, 222, 99 A. S. R. 549. See also 5 R. C. L. 927, and 40 C. J. 1232, note 12.

The potent reach of sovereign jurisdiction to all property within its territorial limits, whether real or personal, takes characteristic hold in case of escheat when the decree of a state court as to prop-

erty localized in its jurisdiction is binding against the world. Hamilton v. Brown, 161 U. S. 256, 16 S. Ct. 585, 40 L. ed. 691. The executive invokes the law of escheat; but the courts determine whether it applies, and if so, how, and by their judgments settle the succession, as they do under wills and statutes of descent. If there is bar to the action of either department, it is not of law but rather and only of fact. Absence of situs within the jurisdiction no more obstructs one arm of government than another.

■ The next inquiry is whether there are means for exercising jurisdiction. With us, as in most states, substantive law is implemented with the procedural device of substituted service. Service of summons may be by publication or personally without the state in the cases enumerated in G. S. 1923 (2 Mason, 1927) § 9235. One of them (subd. 5) is "when the subject of the action is real or personal property within the state, in or upon which the defendant has or claims a lien or interest, or the relief demanded consists wholly or partly in excluding him from any such interest or lien." Explicitly providing for the exercise of jurisdiction over personal property, there is no room for negative or restricted interpretation. There is a similar act of congress, Judicial Code, § 57 (28 USCA, § 118) providing that the United States district courts may proceed in rem or quasi in rem by substituted service, personal "if practicable," and if not then by publication. There is no longer question of the validity of such laws and the right they give to act, not on or against persons, but solely on or in respect to personal as well as real property and upon or against the interests of persons having or claiming such property or some right therein. Shepherd v. Ware, 46 Minn. 174, 48 N. W. 773, 24 A. S. R. 212; Pennoyer v. Neff, 95 U. S. 714, 24 L. ed. 565; Arndt v. Griggs, 134 U. S. 316, 10 S. Ct. 557, 33 L. ed. 918; Hamilton v. Brown, 161 U. S. 256, 16 S. Ct. 585, 40 L. ed. 691; 15 R. C. L. 633.

Under such laws, the only question, the statute complied with, is whether in case of chattels the res is so localized—has such situs within territorial reach of the court—as to be subject to a proceeding in rem or quasi in rem. That question in respect to the sub-

ject matter of plaintiff's trust, unregistered bearer bonds of the par value of upwards of $45,000, is the important one and remains for answer. Following the example of counsel, we ignore a cash item of $713.71.

Equity has the same power to quiet title to chattels as to real property. Lovell v. Marshall, 162 Minn. 18, 24, 202 N. W. 64; 51 C. J. 142. We hold that the involved bonds have a situs in Minnesota adequate, not to confer, but to enable our courts to exercise, that jurisdiction by a decree which will operate upon any interest that defendants have, or claim to have, therein. That will not be a judgment in personam, but only one quasi in rem. 3 Freeman, Judgments (5 ed.) § 1522; Freeman v. Alderson, 119 U. S. 185, 7 S. Ct. 165, 30 L. ed. 372. The argument for defendants (who thus far have appeared specially and only for the purpose of the motion to quash the service) is that due process will be denied by a judgment attempting such relief. We hold that it will not. Pennoyer v. Neff, 95 U. S. 714, 24 L. ed. 565.

Except for analogy, we are not concerned now with certificates of corporate stock, promissory notes payable to named payees, or registered bonds, but only with bonds payable to bearer. Title thereto may be transferred by mere manual delivery. Evidences of debt though they are, yet the property represented, and all rights of ownership, so far inhere in the bonds that one in mere possession of them ordinarily has and may transfer title to all they represent as against the whole world. 3 R. C. L. 837. Moreover, material alteration of the paper destroys the property by avoiding the instrument, subject only to the exception of N. I. L. § 124, G. S. 1923 (2 Mason, 1927) § 7167. Although the negotiable nature of commercial paper is but a legal attribute, the resulting potency of the paper itself explains why liability on bill or note is not subject to garnishment. G. S. 1923 (2 Mason, 1927) § 9361; annotation, L. R. A. 1918C, 731. That bills and notes are in themselves so far personal property as to be subject to attachment or replevin (6 C. J. 197; 54 C. J. 422) is not questioned. Foreign attachment where the defendant does not appear is a proceeding in rem, the judgment operating on the property as such.

A debt or mere right of action with nothing more is wholly incorporeal, with no evidence or representative which can give it habitation anywhere. As to such property, whether it seeks to tax or adjudicate, sovereign power must proceed in personam simply because there is nothing to take hold on for proceeding in rem or quasi in rem. Hence there can be no jurisdiction to adjudge ownership save as there is jurisdiction in personam over the persons who must be bound in order to settle that issue. 30 Harvard L. Rev. 486, 488. But when debtor and creditor create such a corporeal thing as bearer bonds, they have created something upon which, jurisdiction of any kind may act. They have made more than mere symbol. They have fabricated a matrix-like container for the property, wherein it is to be carried from place to place, jurisdiction to jurisdiction, at the will of the possessor. Mere manual transfer of the container transfers the property itself to new ownership. The property is so sealed in the container that he who has it must have the contents. In the practical sense, where the container is there also must be the property. It is like unto a common law specialty, "when the contract * * * was bound so indissolubly to the substance of the document that the soul perished with the body when the latter was destroyed or changed in its identity for any cause." Bacon v. Hooker, 177 Mass. 335, 337, 58 N. E. 1078, 1079, 83 A. S. R. 279.

It follows that to make the disembodied nature of a mere debt controlling against the right to adjudicate ownership of the physical thing, which both in law and fact carries the ownership, would be to adopt an esoteric rather than practical standard of decision. The ordinary person would have difficulty in understanding that he has no property in the vault where he keeps his bonds; that his property in the obligations thereby evidenced was not located with and in the bonds. Such extreme subtlety in dealing with the affairs of everyday people must be avoided by courts if the latter are not to force results never contemplated and even opposed to actual and lawful intention. \ "Taxation is an intensely practical matter." Farmers L. & T. Co. v. Minnesota, 280 U. S. 204, 212, 50 S. Ct. 98,

100, 74 L. ed. 371, 65 A. L. R. 1000. Adjudication is none the less so. As much in respect to one as the other should law and principle "be construed and applied with a view to avoiding, so far as possible, unjust and oppressive consequences."

Nothing could be much more unjust and oppressive, because out of line with the lawful intention of contracting parties, than a holding that in a situation such as this, typical of that of the untold millions of the country's savings which are now held in trust, there must be denied the relief necessary to the continued beneficial functioning of the trust. If invalid, all the more reason that there be some tribunal with jurisdiction adequate to the task of promptly settling the issue without awaiting the pleasure of some interested party who may perchance desire delay, for the purpose of choosing his own tribunal or otherwise. If the argument for defendants be good, any such trust and its beneficiaries are in bad predicament. Seldom is there jurisdiction in any one court, in personam, over all concerned, trustee and beneficiaries. So in most cases there would be no power anywhere to settle, if raised, the issue of validity or invalidity. Hence the trustee could play safe only by withholding income. Thereby the purpose of the trust would be thwarted and grave injustice dealt the beneficiaries by any claim of invalidity however ill-founded.

The American Law Institute. is attempting to state what the law is, not what someone thinks it should be. It confirms our conclusion.

"A state can exercise through its courts jurisdiction over a document which is within the territory of the state." Restatement Conflict of Laws, § 109, proposed final draft. It follows, as stated in comment (b), that "to the extent to which by the law which governs a chattel at the time a document is issued, title to the chattel is merged in the document, a state which has jurisdiction over the document can exercise through its courts jurisdiction over the title to the chattel which is merged in the document."

Bills of lading and promissory notes are the documents mentioned to illustrate the application of the statement. That is the

doctrine of Beal v. Carpenter (C. C. A.) 235 F. 273, where it was applied to certificates of shares of a joint stock association, the articles of which provided that the share certificates and the interests thereby represented should be transferable by written assignment indorsed thereon. De Bearn v. Prince de Bearn, 115 Md. 668, 81 A. 223, 36 L.R.A.(N.S.) 421, was a case of condemnation against railroad mortgage bonds as such. See also Spellman v. Sullivan (D. C.) 43 F. (2d) 762, 763, holding that both a trust fund and the surplus income therefrom were "property within the district," and Gassert v. Strong, 38 Mont. 18, 98 P. 497, where a constructive trust was impressed upon corporate stock, the certificates being in the state, and the decree operating against a nonresident's claim of title.

In 1903 Blackstone v. Miller, 188 U. S. 189, 206, 23 S. Ct. 277, 278, 47 L. ed. 439, held that New York might tax the transfer by will of a deposit in New York to the credit of an Illinois owner who died domiciled there. The fiction "mobilia sequuntur personam" had to yield to the "logic and the policy" of the state. The policy was to tax such transfers of the obligations of resident debtors. The logic was that [188 U. S. 205] "the transfer does depend upon the law of New York, not because of any theoretical speculation concerning the whereabouts of the debt, but because of the practical fact of its power over the person of the debtor."

Baker v. Baker, Eccles & Co. 242 U. S. 394, 37 S. Ct. 152, 61 L. ed. 386, and Blodgett v. Silberman, 277 U. S. 1, 48 S. Ct. 410, 72 L. ed. 749, as well as many other cases not needing citation here, as to much of their reasoning if not as to result, have been swept away as law by the overruling of Blackstone v. Miller, 188 U. S. 189, 23 S. Ct. 277, 47 L. ed. 439, in Farmers L. & T. Co. v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, 74 L. ed. 371, 65 A. L. R. 1000, and First Nat. Bank v. Maine, 284 U. S. 312, 52 S. Ct. 174, 76 L. ed. 313.

The result is that bonds, stocks, and negotiable instruments are now generally considered things which may have a situs sufficient to put them within reach of one, and beyond that of another, taxing jurisdiction. In re Estate of Kennedy, 186 Minn. 160, 242 N. W.

697. If "permanently located within another state," they may not be "treated as part of the universal succession and taken into account when estimating the succession tax laid at the decedent's domicile." They are so far corporeal as to be susceptible of a permanent "situs for taxation" in a jurisdiction other than that of the owner's domicile. Farmers L. & T. Co. v. Minnesota, 280 U. S. 204, 210, 50 S. Ct. 98, 74 L. ed. 371, 65 A. L. R. 1000. (Compare Frick v. Pennsylvania, 268 U. S. 473, 45 S. Ct. 603, 69 L. ed. 1058, 42 A. L. R. 316, as to corporeal chattels.) It was in effect so concluded in DeGanay v. Lederer, 250 U. S. 376, 39 S. Ct. 524, 63 L. ed. 1042, where it was held, as to the taxability of income from stocks and bonds possessed by his agent in the United States but owned by a nonresident alien, that the situs of the papers here was controlling.

Interpleader cases such as New York L. Ins. Co. v. Dunlevy, 241 U. S. 518, 36 S. Ct. 613, 60 L. ed. 1140, are not helpful because interpleader contemplates adjudication in personam rather than in rem. In still another category is garnishment of a resident debtor of a defendant nonresident creditor which gets nowhere without jurisdiction in personam of the garnishee. See Harris v. Balk, 198 U. S. 215, 25 S. Ct. 625, 49 L. ed. 1023, 3 Ann. Cas. 1084. Williamson v. Falkenhagen, 178 Minn. 379, 227 N. W. 429, is also distinguishable. The relief wanted was a judgment annulling the assignment of a note and mortgage, and to determine that plaintiff rather than defendant was the owner of the debt evidenced by them. There was no property within control of the court or subject to its jurisdiction against or in respect to which it could proceed in rem or quasi in rem. Therefore, not having jurisdiction over defendants in personam, it could not proceed at all. P. H. & F. M. Roots Co. v. Decker, 111 Minn. 458, 127 N. W. 417.

Here is property, the bearer bonds and cash item, not only localized in this state, not only having a fixed situs here of long standing, but also subjected by its custodian to the jurisdiction and decree of the district court. As far back as 1921 the corpus of the trust estate was either brought into or left in this state, and by the owner localized just as completely and plainly as though it had all

been jewelry or other corporeal personal property. Even though the trust be invalid, there would remain the result of the trustor's acts in placing the property here. Doubtless securities have been sold and the proceeds reinvested. That is immaterial in view of the fact that the corpus now consists of the bearer bonds and the cash, the whole, in our judgment, of such nature as to have acquired the situs in Minnesota necessary to give the state courts jurisdiction to proceed against or in respect to the property in rem or quasi in rem.

A judgment of that kind will not operate against defendants or any of them personally. It will operate on the property to the extent that they have or claim an interest therein. It will either confirm their claims, or, disaffirming them, exclude them from any right, title, or interest, and it may determine whether or not the property is subject to the trust under which plaintiff claims as trustee. There can be no relief otherwise of such nature as to amount to judgment against defendants or any of them in personam, unless some or all appear generally.

Order reversed.