## UNDERWOOD et al. v. PHILLIPS PETROLEUM CO. et al.

### No. 3248.

Circuit Court of Appeals, Tenth Circuit.

May 13, 1946.

J. B. Dudley, of Oklahoma City, Okl., and J. B. Dooley, of Amarillo, Tex. (Dudley, Duvall & Dudley of Oklahoma City, Okl., on the brief), for appellants.

Roy C. Lytle, of Oklahoma City, Okl. (D. I. Johnston, Glenn H. Grubb, Keaton, Wells & Johnston, and Monnet, Hayes & Brown, all of Oklahoma City, Okl., on the brief), for appellees.

Simpson, Clayton & Fullingim, of Amarillo, Tex., for appellee, F. W. Dye.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

In January, 1939, Saulsbury Oil Company [1] employed R. E. Underwood, R. C. Johnson, J. B. Dooley, and R. A. Wilson, lawyers, practicing at Amarillo, Texas, under the name of Underwood, Johnson, Dooley & Wilson [2] to prosecute its claims against Phillips Petroleum Company [3] arising out

---

[1] Hereinafter called Saulsbury.
[2] Hereinafter called the Underwood firm.

[3] Hereinafter called Phillips.

of the purchase by Phillips from Saulsbury of residuals from gas produced from leases belonging to Saulsbury in Wheeler and Gray Counties, Texas. Saulsbury agreed to pay the Underwood firm a contingent fee sufficient to net it 25 per cent of any recovery. From the date of its employment until January 17, 1940, the Underwood firm devoted much time to investigating the facts, consulting with engineers and accountants, investigating the records of the Texas Railroad Commission, and the law pertaining to the rights of Saulsbury. It prepared a brief on the law and also a complaint. The complaint was amended and corrected, from time to time, as additional information was obtained. Prior to January 17, 1940, Saulsbury began negotiations with the engineering firm of Shepard & Peyton at Tulsa, Oklahoma, and it was agreed that the suit should be filed in Oklahoma. About the same time, Saulsbury asked the Underwood firm for a statement of its fees for services to that date. The Underwood firm rendered a bill for $5,000. On January 17, 1940, Saulsbury wrote a letter to the Underwood firm stating that the amount of the bill was satisfactory, and that it agreed to pay such amount "out of whatever amounts are collected from Phillips Petroleum Company in connection with such controversy, whether by settlement, judgment or otherwise." Immediately upon receipt of such letter, the Underwood firm gave notice thereof to Phillips.

Soon after the employment of the Underwood firm, H. V. Robertson, Edwin G. Smith, and M. R. Lindsey, doing business as H. V. Robertson & Company,[4] entered into an agreement with Saulsbury to do the accounting work in connection with the Saulsbury claims. Thereafter, the agreement was reduced to a writing, dated January 15, 1940, in which it was agreed that Robertson should receive 10 per cent of any recovery for its services.

On January 31, 1940, Saulsbury entered into an agreement with Shepard & Peyton, under which Shepard & Peyton were to receive 40 per cent of any recovery, were to assist Saulsbury in the prosecution of its claims, and were to pay out of such 40 per cent, any additional attorneys' fees. Shepard & Peyton had notice of the letter of January 17, 1940. On January 30, 1940, after the decision to bring the suit in Oklahoma, the firm of Keaton, Well & Johnston,[5] of Oklahoma City, was consulted. On January 31, 1940, Saulsbury authorized Shepard & Peyton to employ the Keaton firm. The Keaton firm received the preliminary briefs and complaints which had been prepared by the Underwood firm. The Keaton firm did not have knowledge of the letter of January 17, 1940.

On March 14, 1940, the Keaton firm redrafted the complaint and, on the same date, entered into a separate written contract with Saulsbury, whereby it was agreed that the Keaton firm should receive 20 per cent of the final recovery out of Shepard & Peyton's 40 per cent.

Vance Huff and W. J. Loftus, attorneys of Amarillo, Texas, had rendered services to Saulsbury in connection with its claims. By a letter approved by Saulsbury on March 18, 1940, it was agreed that Huff and Loftus should receive for their services $7\frac{1}{2}$ per cent of the recovery out of Shepard & Peyton's 40 per cent. On January 31, 1940, Shepard & Peyton wrote a letter to Huff and Loftus in which they assigned to Huff and Loftus, for services rendered and to be rendered in connection with the Saulsbury claims, $7\frac{1}{2}\%$ per cent of the total amount of money which might be recovered through settlement, judgment, or otherwise. Huff and Loftus had notice of the letter of January 17, 1940.

On September 1, 1936, Saulsbury delivered its note to the Western Supply Company for $17,619.65, and executed to the Western Supply Company a deed of trust, upon the leaseholds from which the gas residuals sold to Phillips were produced, to secure such note. The deed of trust also imposed a lien upon all oil and gas produced from the leases. On November 30, 1940, the indebtedness was renewed by a note for $22,057.48, bearing interest at 6 per cent, secured by a deed of trust upon the leaseholds and the production therefrom. However, the latter deed of trust

[4] Hereinafter called Robertson.

[5] Hereinafter called the Keaton firm.

recited that it covered only one-half of the sums to be recovered against Phillips. The Western Supply Company assigned its rights under the note and deed of trust to F. W. Dye.

The Keaton firm prosecuted two actions in behalf of Saulsbury against Phillips. They were consolidated, and on December 28, 1942, final judgments were entered in favor of Saulsbury, one for $18,384.68, and the other for $10,793.26 Upon the latter judgment, a credit of $5,396.63 was allowed Phillips on account of a preexisting debt owed to it by Saulsbury. Phillips filed an ancillary bill of interpleader in the consolidated case and paid the amounts, less its credit, into court. The various claimants to the recovery filed answers and cross complaints, setting up their claims.

The fund against which the several claims are asserted came into existence in Oklahoma when Phillips paid the amount due on the judgments into court.

The trial court held that the lien of Dye, under the deed of trust, was prior in right, but that Dye should be required to foreclose the deed of trust and exhaust that security before he should participate in the fund.

It further held that the letter of January 17 should be interpreted according to the law of Texas and that, under such law, it did not create either an equitable assignment of the fund or an equitable lien thereon; that the claim of Robertson was first in time and was prior in right; that the claims of Shepard & Peyton, the Keaton firm, and Huff and Loftus were of equal priority and should participate pro rata. It entered judgment accordingly. The Underwood firm has appealed.

■ The validity and effect of a lien on a chattel are determined by the law of the state where the chattel is at the time when the pledge or lien is created.[6]

■ A state has jurisdiction over personal property within its territorial limits and when a sale, mortgage, or pledge of goods within the jurisdiction of a particular state is made elsewhere, it is competent and reasonable for such state to apply its domestic law to such a transaction.[7]

The tendency of modern authority is to depart from the maxim of Roman law "mobilia sequuntur personam," recognized by the early decisions. That maxim, by which personal property was regarded as subject to the law of the owner's domicile, grew up in the Middle Ages when movable property consisted chiefly of gold and jewels easily carried by the owner from place to place, or secreted in spots known to him alone, and the result has, in modern times, due to the great increase in the amount and variety of personal property not immediately connected with the owner's person, yielded more and more to the lex rei sitae, the law of the place where the property is kept and used.[8]

Moreover, the actions were to be prosecuted in Oklahoma, and the Underwood firm and Saulsbury contemplated that if recovery were had, the fund would come into existence in Oklahoma. Under such circumstances, it is reasonable to infer that they intended the contract to be performed in Oklahoma and to be interpreted according to the laws of that state.

■ Under the law of Oklahoma, a contract, under which one party is to receive compensation for services out of a particular fund, if and when realized, and which

6 American Law Institute, Conflict of Laws, § 279.

7 See Walworth v. Harris, 129 U.S. 355, 364, 9 S.Ct. 340, 32 L.Ed. 712; Hallgarten v. Oldham, 135 Mass. 1, 7, 46 Am. Rep. 433; Schmidt v. Perkins, 74 N.J. L. 785, 67 A. 77, 78, 11 L.R.A.,N.S., 1007, 122 Am.St.Rep. 417; Farmers & Mechanics National Bank v. Loftus, 133 Pa. 97, 19 A. 347, 7 L.R.A. 313; Cronan v. Fox, 50 N.J.L. 417, 14 A. 119; Barnett v. Kinney, 147 U.S. 476, 13 S.Ct. 403, 37 L.Ed. 247; Smead & Powell v. D. W. Chandler & Co., 71 Ark. 505, 76

S.W. 1066. 65 L.R.A. 353; United States v. Guaranty Trust Co., 293 U.S. 340, 55 S.Ct. 221, 79 L.Ed. 415, 95 A.L.R. 651; Hutchison v. Ross, 262 N.Y. 381, 187 N. E. 65, 89 A.L.R. 1007.

8 See Pullman's Palace Car Co. v. Pennsylvania, 141 U.S. 18, 22, 11 S.Ct. 876, 35 L.Ed. 613; Hutchison v. Ross, 262 N.Y. 381, 187 N.E. 65, 68–71, 89 A. L.R. 1007; First Trust Co. of St. Paul v. Matheson, 187 Minn. 468, 246 N.W. 1, 2, 87 A.L.R. 478; In re St. Paul & K. C. Grain Co., 89 Minn. 98, 94 N.W. 218, 223, 99 Am.St.Rep. 549.

has been performed by such party, gives him an equitable lien on the fund, when created, in the hands of any one having notice of the contract.[9] The Oklahoma rule is in accord with the general law.[10]

Accordingly, we conclude that the Underwood firm acquired an equitable lien on the fund when it came into existence, since the fund was in Oklahoma when the lien was created.

Each of the several contracts provided for the payment of stipulated percentages of the recovery against Phillips, except the one with the Underwood firm, which provided for the payment of $5,000 out of such recovery. They aggregate 50 per cent of such recovery plus $5,000. Unless the securities held by Dye are sufficient to satisfy his claim and leave $5,000 to apply on the other claims, the claimants, other than Dye, cannot be paid in full.

All of the claimants, except Dye, were to be paid out of a single fund. Each rendered services which were essential, and which contributed substantially to the recovery of the judgments and the creation of the fund. The earlier services, rendered by Robertson and the Underwood firm, would have been without avail unless the later services had been rendered by the Keaton firm and Shepard & Peyton. It was the joint, mutual efforts of all which brought about the recovery and the creation of the fund.

While the contracts were entered into at different dates, all of the equitable liens arose simultaneously on the creation of the fund.

In the absence of relations or conditions requiring a different result, where several persons are all entitled to participate in a common fund and the fund is insufficient to discharge all the claims in full, equity will apply the maxim that "Equality is Equity" and will decree a pro rata distribution of the fund.[11]

We conclude that the several claimants, other than Dye, should share in the fund pro rata.

The judgment is reversed and the cause is remanded for further proceedings in accordance with this opinion.

---

[9] Correll v. Holt, 191 Okl. 622, 132 P. 2d 953; Clark v. Armstrong & Murphy, 180 Okl. 514, 72 P.2d 362.

[10] See Barnes v. Alexander, 232 U.S. 117, 34 S.Ct. 276, 58 L.Ed. 530; Mitchell v. Bowman, 10 Cir., 123 F.2d 445; Union Trust Co. of Maryland v. Townshend, 4 Cir., 101 F.2d 903.

[11] Pomeroy's Equity Jurisprudence, 4th Ed., Vol. 1, § 407; Century Indemnity Co. v. Kofsky, 115 Conn. 193, 161 A. 101, 103; Brill v. W. B. Foshay Co., 8 Cir., 65 F.2d 420, 424; Morris, Mather & Co. v. Port of Astoria, 141 Or. 251, 15 P.2d 385, 390.